### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALYSSA MARIE VULAKH**<br>101 North York Road<br>Willow Grove, PA 19090<br><br>*Plaintiff,*<br><br>vs.<br><br>**HIGHLINE AUTOMOTIVE, INC.**<br>4343 Torresdale Avenue<br>Philadelphia, PA 19124<br><br>**and**<br><br>**HIGHLINE AUTOMOTIVE GROUP, LLC**<br>4343 Torresdale Avenue<br>Philadelphia, PA 19124<br><br>*Defendants.* | NO. 24-1773<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

### **FIRST AMENDED COMPLAINT**

Plaintiff, Alyssa Marie Vulakh (Plaintiff or "Ms. Vulakh"), by and through undersigned counsel, hereby files this First Amended Complaint against each Defendant:

### **INTRODUCTION**

1. Plaintiff initiates this action to seek redress against each Defendant for unlawful violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 200d et seq.) and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**PARTIES**

2. Plaintiff is an adult individual currently residing at the above-captioned address.

3. Defendants, Highline Automotive, Inc. and Highline Automotive Group, LLC ("Defendants") are believed and therefore averred to be domestic Pennsylvania corporations with a registered place of business at the above-captioned address.

4. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of the instant action.

5. At all times relevant hereto, Defendants acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of his or her job duties.

**JURISDICTION and VENUE**

6. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

7. The Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8. The United States District Court for the Eastern District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and

1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

9. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because each Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein).

## FACTUAL BACKGROUND

10. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

11. Plaintiff is a female who was hired by Defendants in or around July 2022 as a Business Development Center ("BDC") Manager, from Defendants' car dealership located at 4343 Torresdale Avenue, Philadelphia, PA 19124

12. Plaintiff was primarily supervised by General Manager, Eric Patrick ("Patrick").

13. Shortly after Plaintiff's hire, Patrick began to subject Plaintiff to severe and pervasive sexually harassing, offensive, and unwelcomed comments/behavior/touching. By way of example and without limitation:

   a. on one occasion while working in the finance office, Patrick made a mistake and stated "fuck me," and then looked at Plaintiff and asked, "would you fuck me," after which Plaintiff immediately walked out of the office;

   b. Patrick would pervasively make comments every day, regarding when Plaintiff and he were going out, when could he come to Plaintiff's house, and when could Plaintiff and he go get drinks, which Plaintiff always rejected;

    c. Patrick texted Plaintiff on one occasion asking if he could call Plaintiff "baby," to which Plaintiff responded, "No, sir," and Patrick then tried to play it off as a joke;

    d. Patrick would routinely ask Plaintiff what her sexual kinks were, which Plaintiff attempted to ignore as it was highly embarrassing;

    e. Patrick asked Plaintiff if he could touch her feet, to which Plaintiff replied no – but on at least one occasion when Plaintiff was wearing sandals Patrick touched her foot. When Plaintiff asked Patrick what he was doing, he pretended nothing happened, after which Plaintiff immediately went to her desk and never wore sandals or shoes where her feet were exposed in the office again;

    f. Patrick informed Plaintiff on multiple occasions that what she was wearing was beautiful, and that she was so distracting that he could not work; and

    g. Patrick made multiples jokes about threesomes, and then asked Plaintiff if she was "into threesomes."

14. Plaintiff did her best to ignore Patrick's advances, clearly showing her discomfort through body language and complaints, but he continued to sexually harass Plaintiff, and his unwelcomed sexual behavior made her feel increasingly uncomfortable.

15. Plaintiff was fearful of losing her job and Defendants did not have a dedicated HR department, leaving Plaintiff to fend for herself as Patrick was her direct supervisor.

16. However, in or about the end of 2022 after almost daily sexually harassing and offensive comments by Patrick, Plaintiff informed him forcefully that his behavior had to stop, and that she was not interested in going out with him.

17. Patrick then became very angry and threatened to terminate Plaintiff on multiple occasions moving forward.

18. Thereafter in or around the second week of January of 2023, Plaintiff was out of the office for a week, sick with strep throat.

19. Immediately upon returning to the office, on or about January 24, 2023, while still feeling sick and vulnerable, Patrick came close to Plaintiff and started physically touching her.

20. When Plaintiff moved away, Patrick laughed and jokingly said "you look uncomfortable."

21. When Plaintiff asked Patrick to please leave her alone and stop harassing her, Patrick became angry and informed Plaintiff that he was "going to get rid of" her.

22. As a result of the aforesaid sexually harassing behavior and threats of termination, Plaintiff felt that she had no other choice than to resign her employment with Defendants.

23. Plaintiff was constructively discharged from her employment with Defendants on or about January 24, 2023.

24. Plaintiff believes and therefore avers that she was subjected to severe and pervasive *quid pro quo* sexual harassment and a hostile work environment by Patrick, and that she was ultimately forced to sign for rejecting his sexual advances and objecting to/complaining of the same to him, in violation of Title VII.

25. After Plaintiff filed an EEOC charge, the Defendants' owner, Roman Zarhin ("Zarhin") showed a copy of the charge to James Grim ("Grim"), a general manager for the company in or around August 2023.

26. Zarhin asked if Plaintiff was the daughter of an individual he ostensibly knew to which Grim replied in the affirmative.

27. Zarhin then pressured Grim to reach out to Plaintiff's father and indicate that if Plaintiff continued to pursue her lawsuit, Zarhin would engage in harmful "mudslinging" against her.

28. Zarhin also told Grim to tell Plaintiff's father "I will get on the stand and say all these things, I don't give a shit."

29. On or about August 25, 2023, Grim did in fact tried to reach out to Plaintiff's father via telephone at Zarhin's direction.

30. Plaintiff's father told Grim to relay to Zarhin that Plaintiff would continue to move forward with her claims.

31. Grim relayed that information to Zarhin. At that point, Zarhin again directed Grim to try to intimidate Plaintiff's father again on or about September 1, 2023 into getting Plaintiff to drop her claims.

32. Grim was again unsuccessful.

33. After confronting Zarhin about his abusive and harassing behavior, Grim agreed to part ways with the Defendants and resigned on or about September 15, 2023.

34. Upon information and belief, Zarhin and his company have been involved in at least one other discrimination charge filed against him for race discrimination.

35. Upon information and belief, Zarhin has tried to engage in "mudslinging" to defeat other EEOC charge(s) as well.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**[(1) Gender / Sex Discrimination, (2) Hostile Work Environment, and (3) Retaliation]**
*Against All Defendants*

36. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

37. Plaintiff was subjected to unlawful discrimination on the basis of gender / sex.

38. While employed by Defendants, Plaintiff was subjected to a hostile work environment based on her gender / sex and/or in retaliation for complaining of gender / sex discrimination and sexually harassing behavior as outlined supra.

39. The aforementioned harassment that Plaintiff was subjected to throughout her employment with Defendants was severe and pervasive and interfered with her ability to perform her job.

40. Plaintiff complained of and objected to the aforementioned harassment multiple times directly to Patrick and asked him to cease the same; however, Patrick disregarded her concerns and instead became angry with Plaintiff, threatening to terminate her employment.

41. The aforementioned harassing/retaliatory treatment was so intolerable such that no reasonable person of the same gender and position as Plaintiff could have been expected to remain in such conditions.

42. As a result of Defendants' aforementioned harassing/retaliatory treatment and failure to address her concerns of sexual harassment, Plaintiff was forced to resign from her position and therefore was constructively discharged from her employment with Defendants on or about January 24, 2023.

43. Defendant further retaliated by trying to use an employee to discourage Plaintiff from pursuing her claims.

44. As a result of Defendants' unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

**COUNT II**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**[(1) Gender / Sex Discrimination, (2) Hostile Work Environment, and (3) Retaliation]**
*Against All Defendants*

45. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

46. Plaintiff was subjected to unlawful discrimination on the basis of gender / sex.

47. While employed by Defendants, Plaintiff was subjected to a hostile work environment based on her gender / sex and/or in retaliation for complaining of gender / sex discrimination and sexually harassing behavior as outlined supra.

48. The aforementioned harassment that Plaintiff was subjected to throughout her employment with Defendants was severe and pervasive and interfered with her ability to perform her job.

49. Plaintiff complained of and objected to the aforementioned harassment multiple times directly to Patrick and asked him to cease the same; however, Patrick disregarded her concerns and instead became angry with Plaintiff, threatening to terminate her employment.

50. The aforementioned harassing/retaliatory treatment was so intolerable such that no reasonable person of the same gender and position as Plaintiff could have been expected to remain in such conditions.

51. As a result of Defendants' aforementioned harassing/retaliatory treatment and failure to address her concerns of sexual harassment, Plaintiff was forced to resign from her position and therefore was constructively discharged from her employment with Defendants on or about January 24, 2023.

52. Defendant further retaliated by trying to use an employee to discourage Plaintiff from pursuing her claims.

53. As a result of Defendants' unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that the Court enter judgment in his favor and against each Defendant and that it enters an Order as follows:

a. Each Defendant is to be permanently enjoined from engaging in discrimination against the Plaintiff on any other basis prohibited under applicable law;

b. Each Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting discrimination and retaliation in the workplace, and is to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

c. Each Defendant is to be prohibited from continuing to maintain its unlawful policy, practice, or custom of discriminating against employees and is to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

d. To the extent available as a remedy as a matter of law, each Defendant is to compensate the Plaintiff, reimburse the Plaintiff, and to make Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. The Plaintiff should be accorded those benefits illegally withheld from the date the Plaintiff first suffered discrimination at the hands of the Defendant or its agents until the date of verdict;

e. The Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by each Defendant's actions to the extent they are available as a matter of law;

f. The Plaintiff is to be awarded punitive and/or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish each Defendant for its willful, deliberate, malicious and outrageous conduct and to deter each Defendant or other employers from engaging in such misconduct in the future;

g. The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h. The Plaintiff is to be awarded the costs and expenses of this action and attorneys fees as provided by applicable federal and state law;

i. Any verdict in favor of the Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal and/or state law and to reflect the tax consequences thereof;

j. The Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action in an effort to ensure each Defendant does not engage – or ceases engaging – in unlawful retaliation against Plaintiff or other witnesses to this action;

k. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

l. Plaintiff demands trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38.

Respectfully submitted,

**KARPF, KARPF & CERUTTI P.C.**

<u>/s/ W. Charles Sipio</u>
W. Charles Sipio, Esq.
Samantha Pankey Martin, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
(T) 215-639-0801 / (F) 215-639-4970

*Attorneys for Plaintiff*

Dated: October 28, 2024